# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YELLOW GROUP LLC; YELLOW CAB AFFILIATION, INC.; TAXI AFFILIATION SERVICES LLC; TAXI MEDALLION MANAGEMENT, LLC; YC1 LLC; YC2 LLC; YC17 LLC; YC18 LLC; YC19 LLC; YC20 LLC; YC21 LLC; YC22 LLC; YC25 LLC; YC26 LLC; YC29 LLC; YC32 LLC; YC37 LLC; YC49 LLC; YC51 LLC; YC52 LLC; YC56 LLC; 5 STAR FLASH, INC.; CHICAGO MEDALLION ONE LLC; CHICAGO MEDALLION FIVE LLC; CHICAGO MEDALLION SIX LLC; CHICAGO MEDALLION SEVEN LLC; CHICAGO MEDALLION ELEVEN LLC; and YOUR PRIVATE LIMOUSINE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant. | CIVIL ACTION NO.: 12-cv-7967 <br><br> Hon. Sara L. Ellis <br> Hon. Jeffrey T. Gilbert |

**Plaintiffs' Response to Defendant's Second Motion to Dismiss**

Michael A. Stiegel (ARDC No. 2735830)
  mastiegel@michaelbest.com
Carrie A. Hall (ARDC No. 6269884)
  cahall@michaelbest.com
Paul R. Coble (ARDC No. 6296105)
  pcoble@michaelbest.com
Zachary J. Watters (ARDC No. 6310675)
  zjwatters@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Avenue
Suite 2000
Chicago, Illinois  60601

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I. Nature Of The Case, Uber's First Motion To Dismiss, And Judge Coleman's Decision On Uber's First Motion. .................................................................................................... 2

II. Uber's Lanham Act Violations For False Advertising And False Representation Of Affiliation Are Separate From Uber's Common Law Unfair Competition. ....................... 4

III. Plaintiffs Have Standing To Bring Their False Advertising Claims Under The Lanham Act And Have Sufficiently Stated Claims For False Advertising (Count I). ...................... 7

    A. Plaintiffs have stated a claim for Uber's false representations of insurance and licensing of its taxi and livery drivers. ................................................................. 8

    B. Plaintiffs have stated a claim for Uber's false representations of insurance relating to UberX. ............................................................................................................... 8

    C. Plaintiffs have stated a claim for Uber's false representation of "standard taxi rates." ................................................................................................................... 10

    D. Uber's motion is moot as it relates to Uber's false claims that it is a "premium" or "high quality" service and Uber's false representation of a "20% gratuity" because those statements are no longer part of Plaintiffs' false advertising claim. ............................................................................................................................... 10

IV. Plaintiffs Have Standing To Bring Their False Association Claims Under The Lanham Act And Have Sufficiently Stated A Claim For False Representation Of Affiliation (Count II). ............................................................................................................................ 11

V. Plaintiffs State A Common Law Claim For Unfair Competition (Count VI). ................. 12

VI. Plaintiffs State A Claim For Tortious Interference With Contractual Relations (Count V). ............................................................................................................................... 13

VII. The Court Should Resolve Plaintiffs' Illinois *Statutory* Unfair Competition Claims (Counts III, IV), On The Same Grounds As Plaintiffs' Lanham Act Claims. ................... 15

VIII. Conclusion ......................................................................................................................... 15

Defendant Uber Technologies, Inc. ("Uber") has moved again to dismiss Plaintiffs' complaint. (Dkt. Nos. 89, 90.)[1] Uber first sought to dismiss Plaintiffs' complaint a year ago on the grounds of standing and failure to state a claim for relief, the same grounds on which Uber moves now.[2] (Dkt. No. 20.) After a two-day hearing and oral argument, Judge Coleman held that Plaintiffs have standing to assert their claims. (Dkt. No. 66 at 2–3 (the "Decision").) Judge Coleman also determined that Plaintiffs had stated a claim for each of the six counts in the First Amended Complaint with limited deficiencies. Judge Coleman identified three points on which she found the complaint to lack sufficient detail, and gave Plaintiffs the opportunity to cure. (*Id.* at 9.) Accordingly, Plaintiffs filed the Second Amended Complaint to address the pleading issues as well as add facts that had developed since Plaintiffs filed the First Amended Complaint. (Dkt. No. 77 (cited as "SAC"); *see also* Dkt. Nos. 76, 78.)

Ignoring both Judge Coleman's Decision and the actual content of the Second Amended Complaint, Uber now moves to dismiss on the very same grounds as Uber's First Motion. Uber's *de facto* motion to reconsider merely rehashes old arguments. While Uber tries in vain to recast its tired arguments, it cannot escape the fact that Judge Coleman has already ruled against Uber on the issues raised in Uber's Second Motion. Indeed, Judge Coleman concluded that Plaintiffs are likely to succeed on the merits of their common law unfair competition claim,

---

[1] All told this is in fact Uber's fourth motion to dismiss. After Uber's initial motion to dismiss (Dkt. No. 12), Plaintiffs filed their First Amended Complaint to add a count for common law unfair competition, which mooted Uber's initial motion. (Dkt. Nos. 17, 18.) Shortly thereafter, Uber filed another motion to dismiss the First Amended Complaint. (Dkt. No. 19.) That comprehensive motion was fully briefed, presented by oral argument to Judge Coleman, and decided. (Dkt. Nos. 20, 35, 36, 63, 66.) Plaintiffs filed the Second Amended Complaint in response to that decision. Uber again moved to dismiss the Second Amended Complaint, but included improper evidence. (Dkt. Nos. 82, 83.) Uber was afforded the opportunity to refile its motion, the currently pending motion, without the improper evidence. (Dkt. No. 88.) For simplicity, Plaintiffs will refer to Dkt. Nos. 19-20 as Uber's "First Motion" and the present motion, Dkt. Nos. 89-90, as Uber's "Second Motion."

[2] That Uber has no new arguments relating to the Second Amended Complaint is unsurprising given the fact that Uber announced its intention to file a motion to dismiss before Uber even saw the Second Amended Complaint. (Dkt. No. 75 at ¶ D.)

Count VI. (Dkt. No. 67 at 1.) More troubling, however, is Uber's repeated misrepresentation of Plaintiffs' Lanham Act claims. Contrary to Uber's argument, Plaintiffs' Lanham Act claims are distinct from Uber's violations of local laws. This has been painstakingly spelled out for Uber in three complaints, two briefs from Plaintiffs, and the Decision from the Court. Nonetheless, Uber brazenly resubmits the same fiction it has been spinning for more than a year. The Court should deny Uber's Second Motion.

I. **Nature Of The Case, Uber's First Motion To Dismiss, And Judge Coleman's Decision On Uber's First Motion.**

Plaintiffs are taxi and livery companies that operate vehicle-for-hire transportation businesses in the City of Chicago. Uber also operates its vehicle-for-hire transportation business in Chicago, using a mobile software application to hail, dispatch, meter, and charge passengers. As described in the Second Amended Complaint, Uber competes with Plaintiffs both for drivers and for passengers. (SAC ¶¶ 1-2, 4, 7, 28, 47, 58, 69, 71; *see also* Dkt. No. 35 at 2–7; Dkt. No. 40 at 3–9.) However, in its effort to "disrupt" and "destroy" the current transportation industry, Uber willfully breaks numerous laws and regulations enforced on the other vehicle-for-hire businesses, such as Plaintiffs. (SAC ¶¶ 69-97.) To conceal its unlawfulness, lack of operational standards, and complete absence of accountability, Uber makes a number of objectively false or misleading representations in advertising its services. (SAC ¶¶ 37-58.) Additionally, Uber uses taxi drivers, driving Plaintiffs' vehicles, and actively promotes the idea that taxi companies are Uber's "fleet partners" to propagate the false notion that Uber is affiliated with or approved by Plaintiffs. (SAC ¶¶ 59–68.)

To halt Uber's conduct and seek remuneration for Uber's unlawful competition and Lanham Act Violation, Plaintiffs filed suit on October 3, 2012. Plaintiffs' initial complaint

included five counts and on December 20, 2012, Plaintiffs amended the complaint to add a sixth count for common law unfair competition (Dkt. No. 17 ("FAC")):

| Counts of FAC/SAC | Summary of Each Count |
|---|---|
| Count I | False Advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (SAC ¶¶ 116–20.) |
| Count II | False Representation of Affiliation under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a)(1)(A). (SAC ¶¶ 121–28.) |
| Count III | Illinois Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.* (state version of Count II). (SAC ¶¶ 129-32.) |
| Count IV | Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* (state version of Count I). (SAC ¶¶ 133-37.) |
| Count V | Tortious Interference with Contracts between Plaintiffs and Their Drivers. (SAC ¶¶ 138-41.) |
| Count VI | Illinois Common Law Unfair Competition for Uber's violations of local transportation laws. (SAC ¶¶ 142-46.) |

In January of 2013, Uber moved to dismiss Plaintiffs' First Amended Complaint on identical grounds to Uber's current Motion. (Dkt. No. 19.) Shortly thereafter, Plaintiffs moved for a preliminary injunction under Count VI to prevent Uber from continuing to violate transportation laws. (Dkt. Nos. 23-28.) After both motions were fully briefed, Judge Coleman held a two-day hearing on April 29 and April 30, 2013, the first day an evidentiary hearing on Plaintiffs' then-pending motion for a preliminary injunction and the second day on Uber's First Motion. On September 30, 2013, Judge Coleman issued written opinions on both motions. With respect to the motion for preliminary injunction, the Court held that: (1) Plaintiffs have "demonstrated a more than minimal likelihood of establishing that defendant's activities violate city ordinances"; (2) "[P]laintiffs have shown a likelihood of success on the merits of their Count VI claim[]" for common law unfair competition; and (3) "the activities complained of give defendant competitive advantages that may not be subject to remedy by post-judgment damages." (Dkt. No. 67 at 1.) Judge Coleman, however, denied Plaintiffs' requested injunction—"without prejudice to plaintiffs' right to conduct discovery . . . or to renew their

3

requests for relief following further proceedings—because "the public interest factors weigh against a grant of injunctive relief prior to a more complete development of the record and hearing of the issues." (*Id.* at 2.)

As for Uber's First Motion, the Court held that Plaintiffs had standing for all counts of the First Amended Complaint (*i.e.* for all the same counts alleged in the Second Amended Complaint). Judge Coleman also denied much of Uber's motion to dismiss for failure to state a claim. She sustained each of Plaintiffs' counts, but held that Plaintiffs had not pled sufficient detail as to certain claims within some of the counts. As shown in Exhibit A, Plaintiffs cured each fault identified in the Decision.

Uber now seeks to restart this case from the beginning and ignore Judge Coleman's Decision. Absent extraordinary circumstances, the Court should not re-examine issues decided prior to the case being reassigned. *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("Among other things, the law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination."); *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005) ("In situations where a different member of the same court re-examines a prior ruling, the law of the case doctrine . . . reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one.").

**II.     Uber's Lanham Act Violations For False Advertising And False Representation Of Affiliation Are Separate From Uber's Common Law Unfair Competition.**

Uber's primary attack on the Second Amended Complaint employs the same mischaracterizations about Plaintiffs' Lanham Act claims that Uber unsuccessfully advanced in its First Motion. As before, Uber's Second Motion attempts to rewrite Plaintiffs' Lanham Act claims as a "backdoor" method to enforcing local ordinances. (Dkt. No. 90 ("Uber's Mem.")) at

4

2.) Uber falsely claims that "[t]he bulk of Plaintiffs' Lanham Act false advertising claims are based on allegations that 'Uber's business practices . . . do not comply with numerous laws and regulations.'" (Uber's Mem. at 2.) Since Uber tried this transparent tactic in its First Motion, Plaintiffs have repeatedly explained that their two Lanham Act claims are not grounded upon Uber's violation of local transportation laws. (Dkt. No. 35 at 7–8; Dkt. No. 40 at 9-11.) Judge Coleman was not persuaded by the Uber's mischaracterization of the Lanham Act claims and this Court should see through them too. (Decision at 3-6 ("Count I of the complaint states a claim for relief as to the alleged misrepresentation of insurance coverage."; "The court finds that Count II of the complaint sufficiently alleges a likely loss of goodwill and a claim for relief for false association under the Lanham Act.") Uber has been thoroughly disabused of the notion that Plaintiffs' Lanham Act claims are based on Uber's legal violations, but Uber persists in its mischaracterizations.

As it did before, Uber misguidedly relies on *Dial A Car, Inc. v Transp., Inc.*, 82 F.3d 484 (D.C. Cir. 1996), and, without *any* factual comparison, claims that it is "directly on point." (Uber's Mem. at 2; *see also* First Motion at 9.) Judge Coleman disagreed with Uber and rightly so. As Plaintiffs have previously explained, the *Dial A Car* case is readily distinguishable from the facts of this case and Plaintiffs incorporate by reference their previous discussion of that case. (Dkt. No. 35 at 8.) In short, the allegations in *Dial A Car* were that the defendant had misrepresented that its operations were legal. *Dial A Car*, 82 F.3d at 488. Here, Uber's false statements are not subjective statements about legality, rather they are objectively and demonstrably false or misleading factual statements about the nature and quality of Uber's services, (*see* Decision at 5-7), a classic claim under the Lanham Act.

Uber's violations of local transportation laws are fundamentally different from Uber's false advertising and false representations of affiliation with Plaintiffs. The sole count in Plaintiffs' Second Amended Complaint that relies on Uber's violations of transportation laws is Count VI for Illinois Common Law Unfair Competition. As described below, not only has Judge Coleman determined that Plaintiffs' common law unfair competition claim is proper, but she has also found that Plaintiffs are likely to succeed on the merits of that claim. (Decision at 8-9; Dkt. No. 67 at 1.)

Plaintiffs' standing to assert their Lanham Act claims has already been fully briefed and decided by the Court. As Judge Coleman correctly determined, the law on standing for Lanham Act claims is not as Uber portrays. (Decision at 2 ("Lanham Act claims for false association do not require the plaintiff to establish that he is a competitor of the defendant" and "Illinois' Deceptive Trade Practices Act . . . explicitly provides that in order to prevail under its provisions, 'a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.'").) As described below, Plaintiffs have alleged specific protectable interests that have suffered discernible competitive injuries for each of Plaintiffs' Lanham Act Claims.

Even if direct competition were required for standing, Plaintiffs have already set forth sufficient pleading and ample evidence to show that Plaintiffs and Uber directly compete for both passengers and drivers. (SAC ¶¶ 1, 4, 7, 28, 38, 40, 58, 69, 71; Dkt. No. 24 at 6–9; Dkt. No. 35 at 2–7; Dkt. No. 40 at 3–9.) To avoid needless repetition, Plaintiffs incorporate their previous arguments and evidence by reference. (Dkt. No. 24 at 6–7; Dkt. No. 35 at 2–7; Dkt. No. 40 at 3–9.) To say the least, Uber's position that it does not compete with Plaintiffs—even though Uber operates a competing dispatch business, contracts with drivers and passengers, charges fares for transportation, has the same dispatch license as Plaintiffs, and dispatches to the same taxi and

6

livery drivers—is directly refuted by the pleadings, evidence, and Uber's own admissions. Uber's claim that it is "just an app" rings hollow. Tellingly, at oral argument on this point, in response to Uber's attorney's assertion that "Uber's business is a software app that provides more rides to drivers," Judge Coleman retorted, "Well, Counsel, I mean, a little bit disingenuous in saying that. And I don't even have to look at a video to tell me that there's competition going on here." (Transcript of Hearing on April 30, 2013, at 206:7-11.)

### III. Plaintiffs Have Standing To Bring Their False Advertising Claims Under The Lanham Act And Have Sufficiently Stated Claims For False Advertising (Count I).

As with the First Amended Complaint, Count I of Plaintiffs' Second Amended Complaint is for violations of Section 43(a) of the Lanham Act for Uber's false statements in advertising. To have standing under the Lanham Act, Plaintiffs need only allege that they have a "reasonable interest to be protected" and a "discernible competitive injury." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.2d 427, 438 (7th Cir. 1999); *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993). Plaintiffs have more than exceeded this low bar. Count I of the First Amended Complaint was comprised of four distinct claims, each of which constitutes a Lanham Act violation:

(i) a "20% gratuity" that was not a "gratuity" because Uber kept a portion of the "gratuity" as Uber's fee (FAC ¶ 28; *see also* SAC ¶ 31, 33–34);

(ii) "standard taxi rates" that were, in fact, not standard at all because they exceeded the maximum taxi rates by 20% (FAC ¶ 27; *see also* SAC ¶¶ 56–58);

(iii) that Uber is a "premium" service when it uses the same cars and drivers as other services (FAC ¶ 30; *see also* SAC ¶ 35); and

(iv) that "all [Uber's] driver partners are fully licensed w/ commercial insurance" (FAC ¶ 32; *see also* SAC ¶¶ 41–47, 49).

In her Decision, Judge Coleman determined that false statements (i) ("20% gratuity") and (ii) ("standard taxi rates") were "sufficiently specific factual representations" to constitute

7

alleged violations of the Lanham Act, but determined that Plaintiffs must better "identify a commercial interest that merits Lanham Act protection from the[se] alleged falsehood[s]." (Decision at 5.) Accordingly, Plaintiffs added factual details in the Second Amended Complaint to tie Uber's false statements about its "standard taxi rates" to Plaintiffs' commercial interests and competitive injuries. (SAC ¶ 58.) Judge Coleman also found that the allegations of false statement (iv) (licensure and insurance of taxi and livery drivers) sufficiently identified a protectable interest and Uber's statement was sufficiently factual in nature to be objectively evaluated. (Decision at 6.)

### A. Plaintiffs have stated a claim for Uber's false representations of insurance and licensing of its taxi and livery drivers.

As in the First Amended Complaint, Plaintiffs allege in the Second Amended Complaint that Uber has falsely represented that all of its taxi and livery drivers are licensed and insured. (SAC ¶¶ 48–55.) Plaintiffs identify the false statement, explain why the statement is false, and identify a protectable interest that is damaged by Uber's false statement. (*Id.*) For these reasons, the Court affirmed this claim in whole: "The court finds that Count I of the complaint states a claim for relief as to the alleged misrepresentation of insurance coverage." (Decision at 6.) The Court determined that the First Amended Complaint articulated a protectable interest sufficient to confer standing. (Decision at 6.) Moreover, Plaintiffs have alleged that this factual statement was made in connection with advertising Uber's services in interstate commerce and that the statement is literally false. (SAC ¶¶ 37–55.) Accordingly, Judge Coleman's decision that Plaintiffs have adequately pled this claim should stand.

### B. Plaintiffs have stated a claim for Uber's false representations of insurance relating to UberX.

Of all the claims in the Second Amended Complaint, this is the only one that has not been fully briefed and decided. As explained in the Second Amended Complaint, Uber is falsely

advertising that its UberX drivers and passengers are insured.[3] (SAC ¶¶ 37–47.) UberX is Uber's low end transportation service that uses non-professional drivers in their personal vehicles to offer transportation to the public. (SAC ¶¶ 7, 37.) Uber's claim that its drivers and passengers are insured is literally false because, due to the type of coverage available to Uber and UberX drivers, passengers are never covered by Uber's purported insurance. (*Id.* ¶¶ 45–46.)

Unsurprisingly, Uber once again attempts to rewrite Plaintiffs' claim to fit Uber's narrative. Uber falsely represents that "[a]ll that Plaintiffs allege is that Uber's insurance coverage is not of the type that Plaintiffs believe it should be." (Uber's Mem. at 10.) This is incorrect and completely ignores the allegations that Uber is fasley representing that UberX drivers in Illinois are commercially licensed. (SAC ¶ 42.) Plaintiffs' allegations are not that Uber should have different insurance, rather Plaintiffs allege that Uber falsely represents to the public that UberX passengers are insured when, in reality, they are not. (SAC ¶¶ 45–46.) Uber's advertising that UberX passengers are insured is literally false because Uber does not have an insurance policy that will cover UberX passengers. (SAC ¶ 45 ("In fact, Uber has no commercial insurance that will cover an UberX passenger or driver in any accident.").) This claim does not seek to compel Uber to obtain any particular type of insurance, but rather to prevent Uber from deceptively advertising that UberX passengers are insured when they are not.

The Second Amended Complaint also identifies specific ways in which Uber's false representations about UberX insurance coverage have damaged Plaintiffs. (SAC ¶ 47.) Passengers may be induced into using UberX instead of legitimate transportation services offered by Plaintiffs because they believe they are safe and insured when using UberX. The Livery

---

[3] Uber raises the issue that Uber drivers and passengers contract with a subsidiary of Uber, Raiser LLC, for transportation. If that is the case, it is possible that Raiser LLC will be made a defendant at some point. However, as it relates to Plaintiffs' false advertising claim about the insurance coverage of UberX passengers, those false statements were made by Uber on Uber's website. (SAC ¶¶ 41–44.) Uber is therefore a proper defendant for false advertising claims.

Plaintiff loses customers and the Taxi Plaintiffs lose drivers and dispatches. (*Id.*) Additionally, the medallion owner Plaintiffs are damaged by the decline in medallion value caused by passengers wooed to Uber's illegitimate transportation service by false representations of insurance coverage. (*Id.*) Plaintiffs' have adequately pled their claim for falsely advertising UberX's insurance.

### C. Plaintiffs have stated a claim for Uber's false representation of "standard taxi rates."

The Court has held that Uber's false advertising of "standard taxi rates" is the type of statement that is actionable under the Lanham Act. (Decision at 5.) Judge Coleman, however, found that Plaintiffs had not included sufficient detail about the nature of their injuries stemming from these false statements. (*Id.*) To remedy this, Plaintiffs included additional allegations in the Second Amended Complaint to more fully set forth how Uber's false advertising has damaged Plaintiffs by unfairly diverting drivers and dispatch passengers to Uber. (SAC ¶ 58.)

### D. Uber's motion is moot as it relates to Uber's false claims that it is a "premium" or "high quality" service and Uber's false representation of a "20% gratuity" because those statements are no longer part of Plaintiffs' false advertising claim.

In her Decision, Judge Coleman determined that Uber's advertising that it is a "premium" and "high quality" service was "insufficiently detailed to provide a basis for a Lanham Act claim." (Decision at 5.) While Plaintiffs disagree that, under the unique facts presented in this case, these representations are subjective puffery not actionable under the Lanham Act, Plaintiffs have nonetheless carved these statements out of their false advertising claim. (SAC ¶ 177.) Plaintiffs have also carved out of their false advertising claim Uber's false representation of a "20% gratuity." (*Id.*) Count I of the Second Amended Complaint now includes only the false statements identified in paragraphs 37 through 58. Accordingly, the portions of Uber's Second

10

Motion directed to the "premium," "high quality," and "20% gratuity" false statements should be denied as moot since those statements are not presently part of Plaintiffs' false advertising claim.

## IV.     Plaintiffs Have Standing To Bring Their False Association Claims Under The Lanham Act And Have Sufficiently Stated A Claim For False Representation Of Affiliation (Count II).

Count II alleges that Uber falsely represents that it is sponsored by, approved by, or affiliated with Plaintiffs. Uber makes reference to its "fleet partners" and includes a picture of a yellow cab with a medallion number associated with Plaintiff Yellow Group on Uber's website. (SAC ¶¶ 61–63.) These representations, combined with the fact that Uber uses the Taxi Plaintiffs' vehicles bearing the Taxi Plaintiffs' trademarks and trade dress, gives the false impression that the Taxi Plaintiffs approve of or are otherwise affiliated with Uber. Again, this issue has already been comprehensively briefed and Plaintiffs incorporate their previous arguments and authority by reference. (Dkt. No. 35 at 11–13.)

For the most part this count is unchanged from the First Amended Complaint as Judge Coleman affirmed this count in whole. She rejected Uber's standing argument and found that Plaintiffs had sufficiently stated a claim for relief:

> "In the court's view, this [the "fleet partners"] reference raises an inference that the taxi plaintiffs whose vehicles appear in response to passenger's use of defendant's application are partners in defendant's service. The Lanham Act protects a plaintiff's commercial identity from the false representation that it is endorsed or was associated with a defendant's product. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106-07 (9th Cir. 1992). The court finds that Count II of the complaint sufficiently alleges a likely loss of goodwill and a claim for relief for false association under the Lanham Act."

(Decision at 6-7.) The only change in the Second Amended Complaint relating to this count is that Plaintiffs have added new advertising from Uber's website that further evidence Uber's ongoing efforts to falsely associate with legitimate transportation companies such as Plaintiffs. (SAC ¶¶ 62–63.) Plaintiffs' additional allegations serve

11

only to strengthen Plaintiffs' claim that Uber is unfairly trading off the Taxi Plaintiffs'[4] goodwill and reputation.

Uber argues that Plaintiffs have not stated a claim for false affiliation because Uber "does not display any trademarks other than its own in its app." (Uber Mem. At 16.) The Lanham Act, however, it not limited to falsely displaying another's trademark, it also protects against using any words, symbols, false or misleading descriptions and representations that are likely to cause confusion as to the affiliation with another company. (15 U.S.C. ¶ 1125(a)(1).)[5] Plaintiffs' have alleged not only that Uber uses Plaintiffs' trademarked vehicles in commerce the same way that Plaintiffs do and provides hangtags with Uber's logo for advertising in Plaintiffs vehicles (SAC ¶ 107), but also that Uber uses false and misleading descriptions that are likely to confuse customers into believing that Uber is affiliated with or approved by Plaintiffs. (SAC ¶¶ 59-65.)

## V. Plaintiffs State A Common Law Claim For Unfair Competition (Count VI).

Count VI of the Second Amended Complaint alleges that Uber's violations of transportation laws constitute unfair competition under Illinois common law. (SAC ¶¶ 69-97, 142-146.) Illinois common law recognizes that a company may gain an unfair competitive advantage by violating laws its competitors are compelled to follow and provides a cause of action to remedy those violations. *Jones v. Smith Oil Refining Co.*, 295 Ill. App. 519, 523 (1938). Illinois unfair competition statutes expressly preserve such common law causes of action. 815 ILCS 510/2(c). The *Jones* plaintiff alleged that a competing gas station was using

---

[4] The "Taxi Plaintiffs" are defined in the introductory paragraph of the Second Amended Complaint.

[5] The *Flava Works* case does not help Uber. (Uber Mem. at 15-16.) In *Flava Works, Inc. v. Gunter*, No. 10-C-6517, 2011 U.S. Dist. LEXIS 50067 (N.D. Ill. May 10, 2011), the court dismissed with minimal analysis a false association claim where the complaint alleged merely that the defendants' "adult" videos "often contain[]" plaintiffs' trademarks. (*Id.* at *19-20.) The facts and allegations of *Flava Works* are not remotely close to this case.

an illegal lottery to attract customers. *Jones*, 295 Ill. App. at 521. The appeals court held that the marketing scheme violated Illinois' lottery prohibition and affirmed an injunction based on unfair competition under Illinois common law. *Id*. at 523. As the court explained, an injunction is properly issued "on the theory that the contemplated plan was a violation of law and that the same would be unfair competition of trade as against [plaintiff], and if permitted to continue would seriously interfere with the business of the [plaintiff]." *Id*.

Not only has Judge Coleman determined that Plaintiffs' common law unfair competition claim is viable and properly pled (Decision at 8–9), she also found that Plaintiffs "have shown a likelihood of success on the merits of their [common law unfair competition] claims" and that Plaintiffs have "shown that the activities complained of give defendant competitive advantages that may not be subject to remedy by post-judgment damages." (Decision at 1.)

Plaintiffs have adequately pled such a cause of action. Plaintiffs have detailed how Uber unfairly competes with Plaintiffs by violating the laws with which Plaintiffs must, and do, comply. (*See, e.g.*, SAC ¶¶ 4, 7, 31, 32, 70, 75–77, 78–83, 87, 91, 96.) Whether Uber disputes these violations is irrelevant because Plaintiffs' allegations are taken as true. *Gibson v. City of Chicago*, 910 F2d 1510, 1520-21 (7th Cir. 1990). Uber offers no new reason to disturb Judge Coleman's Decision affirming in whole Plaintiffs' common law unfair competition claim.

## VI. Plaintiffs State A Claim For Tortious Interference With Contractual Relations (Count V).

Count V alleges three ways in which Uber induces drivers to breach their contracts with the Taxi Plaintiffs. First, Uber induces drivers to violate various laws (such as mobile phone laws and taxi fare regulations) when driving the Taxi Plaintiffs' vehicles for Uber, which, in turn, causes drivers to breach their contractual obligations with the Taxi Plaintiffs to abide by the applicable laws and regulations. (SAC ¶¶ 99–103.) Second, Uber induces Yellow Affiliation

drivers to violate their contractual obligations not to display "any mark or name other than [Yellow Affiliation's colors and trademarks] in connection with the operation of the Taxicab." (SAC ¶ 105.) And third, Uber induces Flash drivers to breach their contractual obligation not to work with competing dispatch companies such as Uber. (SAC ¶ 106.)

Judge Coleman ruled that Plaintiffs stated a claim for tortious interference with contractual relations based on Uber requiring drivers to violate the certain laws. (Decision at 8 ("The court finds that the complaint sufficiently alleges that defendant induces drivers to breach their agreements with the taxi plaintiffs by requiring use of mobile phones in violation of applicable law.").) Plaintiffs did not change their allegations with respect to this example of Uber's tortious interference and Uber offers no reason to disturb Judge Coleman's Decision. As for the second and third instances of tortious interference with Plaintiffs' contracts, Judge Coleman's only complaint was that Plaintiffs had not sufficiently identified the breached contract provisions. (Decision at 7-8.) To address that criticism, Plaintiffs added verbatim quotes of the contractual provisions that Uber induces drivers to breach. (SAC ¶¶ 105-16.)

Uber argues that Plaintiffs have failed to allege any damages resulting from Uber's tortious interference. (Dkt. No. 90 at 18.) Not so. The Taxi Plaintiffs allege that they have been damaged by Uber's tortious interference (SAC ¶ 140), including injury to Plaintiffs' goodwill by falsely associating Uber with the operation of the Taxi Plaintiffs' cabs (SAC ¶ 105) and by competing with Flash's contractually exclusive dispatch rights. (SAC ¶¶ 58, 106.) Uber's contention that Plaintiffs do not allege damages is simply wrong. Plaintiffs' allegations with respect to damages are sufficient, and the Court should reject Uber's argument to the contrary.

Finally, without citation, Uber claims that "Plaintiffs cannot presuppose violations of the MCC and/or any regulation in order to create a private cause of action" and then baldly asserts

14

that Uber does not violate the law. (Dkt. No. 90 at 18.) As Judge Coleman's Decision shows, there is nothing wrong with "presupposing" well-pled violations of the law, particularly on a motion to dismiss, as Plaintiffs' allegations are taken as true. And while Uber is entitled to show that there are no violations of the law at some point in the litigation, the Court cannot simply take Uber's word for it. All of Uber's arguments fail with respect to Plaintiffs' tortious interference claim, and the Court should allow Plaintiffs to proceed.

### VII. The Court Should Resolve Plaintiffs' Illinois *Statutory* Unfair Competition Claims (Counts III, IV), On The Same Grounds As Plaintiffs' Lanham Act Claims.

Counts III and IV of Plaintiffs' Second Amended Complaint are state-law mirrors of Plaintiffs' Lanham Act claims. Count III is the Illinois equivalent of Plaintiffs' False Advertising claim (Count I) and Count IV is the Illinois equivalent of Plaintiffs' False Association claim (Count II). Accordingly, Counts III and IV should be resolved on the same grounds as Counts I and II respectively. (See Decision at 7.) However, Uber improperly tries to tie Plaintiffs' common law unfair competition claim, Count VI, into this analysis. (Uber's Memorandum at 17.) Plaintiffs' statutory claims are principally based on Uber's false statements and its false association with Plaintiffs. In contrast, Plaintiffs' common law unfair competition claim is based on Uber unfairly competing with Plaintiffs by violating regulations with which Plaintiffs must and do comply. (*See, e.g.,* SAC ¶¶ 142–146.) Illinois' unfair competition statutes expressly state that they are not intended to displace all unfair competition claims at common law (815 ILCS 510/2(c)) and the conduct that forms the basis for Plaintiffs' common law claim is different than for Plaintiffs' statutory state claims. Therefore, Plaintiffs' common law unfair competition claim, Count VI, does not rise or fall with Plaintiffs' Lanham Act claims.

### VIII. Conclusion

For the foregoing reasons, Plaintiffs request that the Court deny Uber's Second Motion.

Dated: January 31, 2014          Respectfully submitted,

/s/ Michael A. Stiegel

Michael A. Stiegel (ARDC No.2735830)
  mastiegel@michaelbest.com
Carrie A. Hall (ARDC No.6269884)
  cahall@michaelbest.com
Paul R. Coble (ARDC No.6296105)
  pcoble@michaelbest.com
Zachary J. Watters (ARDC No. 6310675)
  zjwatters@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Avenue
Suite 2000
Chicago, Illinois 60601

*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I, Michael A. Stiegel, an attorney of record in this matter, hereby certify that on January 31, 2014, I caused a copy of the foregoing *Plaintiffs' Response to Defendant's Second Motion to Dismiss* to be filed with the Court's CM/ECF system, which provides service to all counsel of record via electronic mail.

/s/ Michael A. Stiegel