# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Yellow Group LLC, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 12 C 7967 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| Uber Technologies Inc., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Approximately thirty Plaintiffs, comprising of taxi medallion owners, taxi affiliations, and livery service providers, sued Uber Technologies Inc. ("Uber"), alleging that Uber competes unfairly by misrepresenting certain features of its service, misleading customers as to an association between Uber and Plaintiffs, and encouraging taxi drivers to breach their agreements with Plaintiffs. Uber filed a motion to dismiss the Second Amended Complaint for failure to state a claim and lack of standing. Uber's motion to dismiss [89] is granted in part and denied in part. The Court dismisses Taxi Affiliation Plaintiffs' claim in Counts I and IV premised on alleged misrepresentations of insurance coverage because this claim does not allege an actual misrepresentation of the insurance coverage of uberX drivers and passengers. The Court also dismisses Plaintiff Your Private Limousine's claims in Counts II, III, and V, as these counts fail to state a claim on behalf of Your Private Limousine. Finally, the Court dismisses without prejudice all claims brought by the Medallion Owner Plaintiffs, as they do not have standing to bring Counts I and IV and do not state a valid cause of action in Counts II, III, V, and VI.

# BACKGROUND[1]

Plaintiffs identify themselves in three groups: (1) the Taxi Affiliation Plaintiffs, (2) the Medallion Owner Plaintiffs, and (3) Your Private Limousine. The Taxi Affiliation Plaintiffs are comprised of Flash Cab, Yellow Cab, and related entities; they operate taxi dispatch services in the Chicago area and own intellectual property related to their taxi brands.[2] The Medallion Owner Plaintiffs own City of Chicago taxi medallions, some of which are leased to cab drivers who operate within one of the Taxi Affiliation Plaintiffs' affiliations.[3] Your Private Limousine is a livery service operating in the Chicago area.

Defendant Uber provides a mobile phone based application that connects customers with taxi, livery, and non-chauffer drivers. Uber customers can request a ride via three types of vehicles: a medallion-bearing taxi, a livery vehicle, or an uberX vehicle.[4] Taxi, livery, and non-commercially licensed drivers that subscribe to Uber use the application to pick up rides in their vicinity. Customers pay for the rides automatically and electronically via credit card information stored within their Uber application. Some Uber drivers are associated with Flash Cab, Yellow Cab, or Your Private Limousine. As a result, when a customer orders a taxi via Uber, the driver who accepts the fare may arrive in a vehicle bearing Flash Cab or Yellow Cab trademarks.

---

[1] Unless otherwise noted, the facts in the background section are taken from Plaintiffs' Second Amended Complaint and are presumed true for the purpose of resolving Uber's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[2] The Taxi Affiliation Plaintiffs are Yellow Group LLC, Yellow Cab Affiliation Inc., Taxi Affiliation Services LLC, 5 Star Flash, Inc., and Taxi Medallion Management, LLC.

[3] The Medallion Owner Plaintiffs are YC1 LLC, YC2 LLC, YC17 LLC, YC18 LLC, YC19 LLC, YC20 LLC, YC21 LLC, YC22 LLC, YC25 LLC, YC26 LLC, YC29 LLC, YC32 LLC, YC37 LLC, YC49 LLC, YC51 LLC, YC52 LLC, YC56 LLC, Chicago Medallion One LLC, Chicago Medallion Five LLC, Chicago Medallion Six LLC, Chicago Medallion Seven LLC, and Chicago Medallion Eleven LLC.

[4] UberX is a service in which non-commercially licensed drivers use their personal vehicles as unlicensed taxicabs.

Likewise, when a customer uses Uber to request a limousine, the driver who provides the customer's ride may be affiliated with Your Private Limousine.

Previously, the Court granted in part and denied in part Uber's motion to dismiss the First Amended Complaint. Plaintiffs filed a Second Amended Complaint, which Uber has moved to dismiss in its entirety.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends upon the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I. Statutory Claims (Counts I-IV)**

In Counts I through IV, Plaintiffs bring two claims under the Lanham Act and two claims under the Lanham Act's parallel Illinois statutes. As the parties acknowledge, and as the Court has previously held, the analysis is the same under the Lanham Act and the relevant Illinois statutes. Doc. 66 at 7; *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 740 (N.D. Ill. 2011). Therefore, the Court will analyze the federal and state statutory counts together.

**A. Misrepresentation of Rates, Licensure, and Insurance (Counts I and IV)**

In Count I, Plaintiffs sue Uber pursuant to 15 U.S.C. § 1125(a)(1)(B) for deceptively representing on its website that Uber taxis charged "standard taxi rates," when in fact riders were charged the meter fare plus a 20% "gratuity" that was split between the driver and Uber. Plaintiffs also point to a statement in an Uber blog post in which Uber stated that all uberX vehicles were "licensed by the city of Chicago, and driven by a licensed chauffeur." Doc. 77 ¶ 40. Plaintiffs further allege in Count I that Uber misrepresented the scope of the insurance

4

coverage for uberX drivers and passengers. Uber allegedly stated that "there will be a $2,000,000 insurance policy applicable to ridesharing trips," *id.* ¶ 43, and later claimed that uberX drivers and passengers would be subject to $1 million in coverage. Plaintiffs contend that this misrepresents reality because Uber does not provide any insurance coverage to drivers and passengers. In Count IV, Plaintiffs bring these same claims pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*

1. **Standing**

Uber moves to dismiss Counts I and IV under Federal Rule of Civil Procedure 12(b)(1), asserting that Plaintiffs lack standing to bring a claim for false advertising because they do not directly compete with Uber. Uber argues that courts "within this district have required that the plaintiff and defendant be direct competitors, *i.e.*, that the plaintiff 'show that it competes at the same level of business as the defendant.'" *Platinumtel Commc'ns, LLC v. Zefcom, LLC*, No. 08-CV-1062, 2008 WL 5423606, at *6 (N.D. Ill. Dec. 30, 2008) (quoting *Medallion Prods., Inc. v. McAlister*, No. 06 C 2597, 2008 WL 5046055, at *5 (N.D. Ill. Nov. 20, 2008)); *see also Gail Green Licensing & Design Ltd. v. Accord, Inc.*, No. 05 C 5303, 2006 WL 2873202, at *5 (N.D. Ill. Oct. 5, 2006).

But the Supreme Court recently criticized this rule, stating that "[i]t is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1392 (2014). The Supreme Court makes clear that a plaintiff suing for false advertising pursuant to the Lanham Act need not directly compete with the defendant, but must allege an injury to a commercial interest in reputation or sales, and that the injury must flow directly from the deception wrought by the defendant's advertising, such that

the false advertising directly caused consumers to divert their business from the plaintiff. *Id.* at 1391.

To succeed on their Lanham Act and Illinois statutory claims, Plaintiffs will be required to prove that Uber's false advertising directly harmed Plaintiffs' reputation or sales. Uber asserts that because the Taxi Affiliation Plaintiffs and Your Private Limousine do not receive a percentage of drivers' fares or a dispatching fee, they cannot allege harm flowing from the false advertising. However, at this stage, the Court is satisfied that the Taxi Affiliation Plaintiffs and Your Private Limousine have plausibly alleged that Uber's deceptive advertising has caused customers to refrain from using their dispatch services. Plaintiffs further plausibly allege that this diversion of business harms the economic value of their business and their reputation. Therefore, the Taxi Affiliation Plaintiffs and Your Private Limousine satisfy the *Lexmark* test, at least at this stage of the proceedings. The Court notes that the Taxi Affiliation Plaintiffs would also satisfy the direct competitor test, based on the limited record before the Court. *See Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*, CIV.A. No. 13-10769-NMG, 2014 WL 1338148, at *6 (D. Mass. Mar. 27, 2014) ("The Court agrees with the magistrate judge that there is sufficient evidence that Uber exercises control over (or is 'in charge of') vehicles-for-hire that compete with plaintiffs in the private transportation business.").

However, the Court finds that the Medallion Owner Plaintiffs do not have standing to assert a claim for false advertising as they do not allege that Uber's false advertising causes them a direct injury. The Medallion Owner Plaintiffs allege that Uber's presence in the market decreases the value of taxi medallions by enabling drivers of non-commercially licensed cars to pick up fares via the Uber application. The Medallion Owner Plaintiffs do not allege that their

injury flows directly from Uber's misrepresentations. Therefore, to the extent that the Medallion Owner Plaintiffs bring false advertising claims, the Court dismisses those claims.

2. **Sufficiency of Allegations**

Uber also moves to dismiss the deceptive representation counts for failure to state a claim pursuant to Rule 12(b)(6). As noted above, Counts I and IV hinge on Plaintiffs' allegations that Uber misrepresented its taxi rates and uberX drivers' licensure and insurance. To state a claim under 15 U.S.C. § 1125(a)(1)(B), Plaintiffs must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

Uber asserts that Plaintiffs have not stated a valid claim because they cannot plausibly allege that they are harmed as a result of Uber's alleged misstatements. Again, Uber asserts that Plaintiffs' income comes from lease payments from drivers, not a percentage of the fares its drivers collect or a fee for dispatching rides. That is, Uber asserts that Your Private Limousine's and the Taxi Affiliation Plaintiffs' streams of income are not diminished as fares are diverted from their dispatch service to Uber.

But the Taxi Affiliation Plaintiffs allege that they are damaged because the value of their business "is largely a product of the number of passengers using their services." Doc. 77 ¶ 58. Plaintiffs assert that "[t]he more passengers that use the Yellow and Flash dispatches, the more valuable those services are to the members of the Yellow and Flash affiliations and the greater the goodwill associated with their names, trademarks, and trade dress." *Id*. Plaintiffs claim that

7

if customers use Uber instead of Plaintiffs' dispatch services, Plaintiffs' reputation will be damaged and, more importantly, Plaintiffs will not be able to charge drivers as much for the right to participate in Plaintiffs' services, including dispatching taxis and livery vehicles. Whether these assertions are true is not at issue here. The question is whether Plaintiffs have plausibly alleged a cause of action. *Iqbal*, 556 U.S. at 678. The Court finds that the Taxi Affiliation Plaintiffs and Your Private Limousine state a plausible claim that Uber's alleged misrepresentations regarding Uber's rates and uberX drivers' licensure and insurance caused them harm. The Court finds that Plaintiffs have also alleged all other elements of a claim pursuant to § 1125(a)(1)(B).

Plaintiffs also allege that Uber misrepresents that uberX drivers and passengers will be covered by a $1 million or $2 million insurance policy, by stating that "[a]t a minimum, there will be a $2,000,000 insurance policy applicable to ridesharing trips," Doc. 77 ¶ 43, and "[a]t a minimum, there will be a $1,000,000 per-incident insurance policy applicable to ridesharing trips," *id.* ¶ 44. Plaintiffs assert that this statement is untrue because "Uber does not have insurance that covers UberX passengers or drivers for either $2,000,000 or $1,000,000. In fact, Uber has no commercial insurance that will cover an UberX passenger or driver in an accident." *Id.* ¶ 45. But as Uber points out, Uber did not assert that it would provide the insurance policy to uberX drivers and riders, rather that drivers and riders would be covered by at least $1 million or $2 million in insurance. Plaintiffs do not actually allege that this statement is false. Instead, Plaintiffs allege merely that Uber does not provide the insurance, and that uberX drivers do not have commercial automobile insurance. Because Plaintiffs do not allege an actual misrepresentation, the Court dismisses without prejudice the allegation that Uber misrepresented insurance coverage of uberX drivers and passengers.

## B. Misrepresentation of Association (Counts II and III)

In Count II, Plaintiffs claim that Uber violates section 43(a)(1)(A) of the Lanham Act, which creates a cause of action against false representations that are "likely to cause confusion . . . or to deceive as to the affiliation, connection, or association of such person with another person, or as to the . . . approval of his or her goods, services, or commercial activities by another person." 11 U.S.C. § 1125(a)(1)(A). Plaintiffs, who are not affiliated with Uber, assert that Uber has misrepresented an association by occasionally referring to its "fleet partners." Yellow Group also alleges that Uber also used a yellow colored SUV in one of its advertisements. The SUV in the ad did not contain Yellow Cab's logo or name, but did include a taxi number 1317. Plaintiffs contend that taxi number 1317 has been assigned to a Yellow cab and of the same make and model as the SUV featured in Uber's advertisement. Plaintiffs claim that Uber's representations are likely to cause confusion or to deceive the public as to the association between Uber and Plaintiffs or the source of Uber's services. Plaintiffs further assert that this confusion is exacerbated by the fact that when a customer orders a taxi or livery vehicle via Uber, a vehicle bearing the Flash or Yellow trademarks will often arrive to pick up the fare. In Count III, Plaintiffs allege that these misrepresentations violate the Illinois Uniform Deceptive Trade Practices Act.

To succeed on this claim, Plaintiffs must prove that (1) Uber made a false or misleading representation of fact (2) in interstate commerce (3) in connection with goods or services, (4) the misleading statement is likely to cause confusion as to Uber's affiliation or association with Plaintiffs or Plaintiffs' approval of Uber's service, and (5) this conduct has harmed or will harm Plaintiffs. *See* 15 U.S.C. § 1125(a)(1); *Boston Cab Dispatch, Inc.*, 2014 WL 1338148, at *4.

The Court finds that the Taxi Affiliation Plaintiffs have plausibly alleged the elements of a claim under § 1125(a)(1)(A). They assert that Uber's representations and the very nature of its service is likely to confuse Uber customers regarding an association between Uber and Flash or Yellow Cab, and that this confusion harms Flash and Yellow Cab's taxi dispatch business. The Taxi Affiliation Plaintiffs plausibly allege that Uber's representations are misleading and are likely to cause confusion among customers to the detriment of the Taxi Affiliation Plaintiffs. Taken together, the Court finds that these allegations satisfy the elements of § 1125(a)(1)(A), sufficient to survive a motion to dismiss.

However, the Court finds that the Medallion Owner Plaintiffs do not state a claim because they do not allege that they have been harmed by Uber's alleged misrepresentations. *See Twombly*, 550 U.S. at 562 (noting that a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery"). Instead, the only harm the Medallion Owner Plaintiffs allege is that Uber's existence in the marketplace depresses the value of taxi medallions. Because the Medallion Owner Plaintiffs do not claim or allow the Court to infer that they are harmed by Uber's alleged misleading statements, their claims under Counts II and III are dismissed.

On the livery side, Your Private Limousine alleges that, as a result of Uber's references to "fleet partners" and the fact that a Your Private Limousine vehicle may pick up an Uber customer who requests livery service, customers are likely to be led to believe "that the livery company sponsors, approves of, or endorses Uber." Doc. 77 ¶ 64. Plaintiffs assert that this confusion is even worse in the livery context "[g]iven that trademarks and trade dress are not as prevalent on the livery side of transportation services." *Id*. But this argument rings hollow. Your Private Limousine does not allege that its cars bear its trademark or any other language or

logo that would identify a limousine as being owned or operated by Your Private Limousine. Therefore, Your Private Limousine cannot assert confusion caused by one of its vehicles responding to a customer's Uber livery request. Your Private Limousine's claims are thus limited to its allegations that Uber improperly refers to its "fleet partners."

With the references to "fleet partners" as its only allegation, the Court finds that Your Private Limousine has not plausibly alleged that Uber made any "false or misleading representation of fact" likely to confuse customers about the association between Uber and Your Private Limousine. 15 U.S.C. § 1125(a)(1)(A). Referring to "fleet partners," on its own, is not a misrepresentation of fact, as it could accurately refer to the owners and drivers of independent livery vehicles that have contracted directly with Uber. And because, by Plaintiffs' own admission, livery vehicles generally do not contain identifying markings of the livery company, it is highly unlikely that a customer would even know that he or she was riding in a Your Private Limousine vehicle and would therefore infer that Your Private Limousine is one of Uber's "fleet partners." Moreover, the reference to "fleet partners" is not a specific, concrete, or measurable statement such that it could, on its own, entitle Your Private Limousine to a Lanham Act claim. *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005). Your Private Limousine has not plausibly alleged a misrepresentation or confusion that would likely result from Uber's reference to "fleet partners." Thus, the Court grants the motion to dismiss Counts II and III as they relate to Your Private Limousine and the Medallion Owner Plaintiffs, but denies the motion as it relates to the Taxi Affiliation Plaintiffs' claims.

## II. Tortious Interference with Contractual Relations (Count V)

Count V alleges that Uber "intentionally and knowingly encouraged individual taxi drivers to breach their agreements" with the Taxi Affiliation Plaintiffs. To prevail on this claim under Illinois law, Plaintiffs must prove that (1) they had an enforceable contract with their drivers, (2) Uber was aware of the contract, (3) Uber intentionally and unjustifiably induced breach of the contract, (4) the breach occurred as a result of Uber's tortious conduct, and (5) Plaintiffs suffered damages. *Schnusenberg v. Univ. of Chicago*, No. 96 C 2467, 1996 WL 451313, at *2 n.2 (N.D. Ill. Aug. 7, 1996). The Taxi Affiliation Plaintiffs allege that Uber encourages three principal breaches of the Taxi Affiliation Plaintiffs' agreements with drivers. The Taxi Affiliation Plaintiffs assert that Uber encourages drivers to violate the trademark clause in the drivers' contracts by providing drivers with Uber branded "hangtags" to suspend from the cabs' interior rearview mirrors. They further allege that Uber encourages drivers to use their cell phones while driving and requires drivers to process credit card transactions via the Uber app, actions that violate local laws which are incorporated by reference into the contracts. Finally, the Taxi Affiliation Plaintiffs claim that by simply subscribing to Uber, drivers violate their agreements with the Taxi Affiliation Plaintiffs that they will not use competing dispatch services.

Uber contends that the Taxi Affiliation Plaintiffs cannot prevail on this claim because they have not alleged that they are harmed by the breach of contract. However, the Court infers damages stemming from the drivers' breach because the Taxi Affiliation Plaintiffs allege that using Uber's dispatch service harms the Taxi Affiliation Plaintiffs' business. As discussed above, the Taxi Affiliation Plaintiffs plausibly allege that losing customers from their dispatch services to Uber causes the Taxi Affiliation Plaintiffs economic and reputational damage. Therefore, the Court finds that the Taxi Affiliation Plaintiffs state a valid cause of action for

tortious interference with contractual relations. In addition to alleging harm, the Taxi Affiliation Plaintiffs have plausibly alleged each of the other elements of tortious interference such that they can survive a motion to dismiss.

However, Count V does not properly allege a cause of action on behalf of the Medallion Owner Plaintiffs. With regard to the Medallion Owner Plaintiffs' contracts with drivers, the second amended complaint states that "[a]ll drivers that are associated with Yellow Affiliation and Flash or who lease a vehicle under the Medallion Owner Plaintiffs' medallion licenses agree to abide by the ordinances and rules and regulations promulgated by the City of Chicago." Doc. 77 ¶ 102. From this, it appears that the Medallion Owner Plaintiffs challenge the use of cell phones while driving and Uber's payment system, asserting that both violate governing laws and regulations.[5] But the Medallion Owners do not plausibly allege or allow the Court to infer that they have been harmed by their drivers' violations of these contract provisions. Unlike the Taxi Affiliation Plaintiffs, the Medallion Owner Plaintiffs do not plausibly assert any reputational or economic harm stemming from the drivers' violations of local ordinances or regulations. *See Cartwright v. Cooney*, 788 F. Supp. 2d 744, 754 (N.D. Ill. 2011) ("Absent any allegation from which the Court plausibly could infer damages as a result of Defendant's conduct, Plaintiff cannot maintain a claim for tortious interference with contractual relations."). Therefore, Count V is dismissed for failure to state a claim as it relates to the Medallion Owner Plaintiffs.

Additionally, it does not appear that Count V even attempts to state a claim on behalf of Your Private Limousine. Count V mentions only "taxi drivers" and "their agreements with Taxi Plaintiffs." Doc. 77 ¶¶ 139–40. Although Count V also incorporates paragraphs 1 through 115

---

[5] Plaintiffs cite an Illinois statute that a driver "may not use a hand-held mobile telephone while driving a commercial motor vehicle," 625 Ill. Comp. Stat. 5/6-527(a), and a regulation that cabs "must process electronic forms of payment through their affiliations or licensed medallion managers," Doc. 77 ¶ 96.

13

by reference, none of those paragraphs state a claim for tortious interference of contract on behalf of Your Private Limousine. To the extent that Count V could be read to include a claim on behalf of Your Private Limousine, that claim is dismissed without prejudice. Thus, the motion to dismiss Count V is denied with respect to the Taxi Affiliation Plaintiffs, but granted with respect to the Medallion Owner Plaintiffs and Your Private Limousine.

### III.     Illinois Common Law Unfair Competition (Count VI)

In Count VI, Plaintiffs claim that "Uber's business practices violate numerous laws and regulations" and therefore provide Uber with an "unfair competitive advantage." *Id.* ¶¶ 143–44. Uber moves to dismiss this claim based on the rationale that "[c]ommon law unfair competition claims 'rise or fall' based on the Lanham Act." *Ho v. Taflove*, 696 F. Supp. 2d 950, 956 (N.D. Ill. 2010), *aff'd sub nom. Seng-Tiong Ho v. Taflove*, 648 F.3d 489 (7th Cir. 2011). As the Court noted in the context of the motion to dismiss the First Amended Complaint, the Illinois Deceptive Trade Practices Act does not foreclose the possibility of proceeding on an Illinois common law claim for unfair competition. *See* 815 Ill. Comp. Stat. 510/2(c) ("This Section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State."). Uber's argument to dismiss Count VI is premised entirely on the proposition that the Court would dismiss the statutory counts in their entirety, a proposition that has not come to fruition. This Opinion does, however, dismiss all statutory claims brought by the Medallion Owner Plaintiffs. Because the Court dismisses all of the Medallion Owner Plaintiffs' claims and because Count VI does not contain any additional allegations that could allow the Court to find that the Medallion Owner Plaintiffs have stated a valid cause of action at common law, the Court dismisses Count VI as it relates to the Medallion Owner Plaintiffs. *Ho*, 696 F. Supp. 2d at 956.

Count VI survives as it relates to the claims of the Taxi Affiliation Plaintiffs and Your Private Limousine, as they have valid statutory claims.

**IV.** *Dial A Car*

Uber also contends that the D.C. Circuit's opinion in *Dial A Car, Inc. v. Transportation, Inc.* warrants dismissing the entire Second Amended Complaint. 82 F.3d 484 (D.C. Cir. 1996). In *Dial A Car*, the D.C. Circuit held that the plaintiff limousine service could not bring a Lanham Act claim against a competing taxicab company when the plaintiff sought only to enforce violations of local taxicab ordinances and regulations. *Id.* at 490 ("we cannot find a single case that purports to extend the [Lanham] Act to allow federal judges to interpret and *enforce* municipal regulations"). Suing under the Lanham Act, the plaintiff asked the court to conclude that the defendant's limousine service violated a D.C. Taxicab Commission Order. The Court of Appeals held that the plaintiff "should be forced to take its argument to the D.C. Taxicab Commission and lobby the Commission to crack down on [the defendants'] activities, assuming they are proscribed." *Id.* The complaint in *Dial A Car* therefore hinged on the allegation that the defendant's service was illegal.

Here, while Plaintiffs certainly believe and assert that Uber's service violates certain local ordinances and regulations, they are careful to base the Second Amended Complaint on allegations of misrepresentation separate and apart from the legality of Uber's service. *See Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*, No. CIV.A. 13-10769-NMG, 2014 WL 1338144, at *25 (D. Mass. Feb. 28, 2014) ("A number of reasons counsel against dismissing Count II on the basis of Uber's *Dial A Car* argument."), *report & recommendation adopted in part & rejected in part*, No. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014). Therefore, as the court held in *Boston Cab Dispatch, Inc.*, the Court finds that *Dial A Car* does not bar

Plaintiffs' surviving allegations that Uber misrepresented certain facts, such as taxi rates, the licensure of uberX drivers, and Uber's association with the Taxi Affiliation Plaintiffs.

To the extent that the Second Amended Complaint alleges that Uber violated the Lanham Act or its Illinois equivalents by simply operating illegally or by misrepresenting the legality of its service, those allegations fail under the rationale in *Dial A Car*. *Dial A Car, Inc.*, 82 F.3d at 488 ("[I]t appears that appellant is simply using the Lanham Act to try to enforce its preferred interpretation of [a D.C. Taxicab Commission Office Administrative Order] instead of adjudicating the issue before the Commission. We reject such a gambit.").

## CONCLUSION

Uber's motion to dismiss [89] is granted in part and denied in part. The Court grants the motion to dismiss the claims of the Taxi Affiliation Plaintiffs in Counts I and IV regarding alleged misrepresentations of insurance coverage. The Court denies the motion to dismiss with regard to all other claims by the Taxi Affiliation Plaintiffs. The Court further grants the motion to dismiss Your Private Limousine's claims in Counts II, III, and V. Your Private Limousine's claims in Counts I, IV, and VI survive. Finally, the Court dismisses all claims by the Medallion Owner Plaintiffs. All claims dismissed are dismissed without prejudice.

Dated: July 10, 2014

SARA L. ELLIS
United States District Judge